O
JS-6

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| A.R., a minor, by and through his parents, CHARLES REESE and HELEN REESE, and on their own behalf,<br><br>     Plaintiffs,<br>  v.<br>SANTA MONICA MALIBU SCHOOL DISTRICT; and DOES 1 to 10,<br><br>     Defendants. | Case No. 2:12-cv-4812-ODW (SHx)<br><br>**JUDGMENT** |

## I.   INTRODUCTION

This appeal concerns an Administrative Due-Process Hearing under the Individuals with Disabilities Education Act ("IDEA"). 20 U.S.C. § 1400 *et seq*. Plaintiffs A.R. and his parents appeal the Administrative Law Judge's ("ALJ") decision in favor of Santa Monica-Malibu Unified School District. As this is a straightforward review of an administrative decision, the parties consented to trial on the papers. This matter is now before the Court on the parties' Trial Briefs (ECF Nos. 57, 58), submitted evidence, and the Office of Administrative Hearings ("OAH") record.

Upon consideration of Plaintiffs' appeal, the Court **AFFIRMS** the ALJ's determination that the District's initial assessments of A.R. were appropriate and that

the District offered A.R. a Free Appropriate Public Education ("FAPE"), both procedurally and substantively.

## II. BACKGROUND

A.R. was diagnosed with Autism. (Pls.' Trial Br. 2.) When he was referred to the District to evaluate his special-education and related-services needs, the District conducted Language and Speech, Occupational Therapy, and Psychoeducational evaluations. (*Id.*) Each assessment was conducted by a professional in that field and each consisted of multiple tests. (OAH Decision 5–11.)

A.R.'s first Individualized Education Plan ("IEP") meeting was held on November 8, 2010. (*Id.* at 11.) The IEP team, which included the professionals who conducted the assessments and a special-education teacher (among others), found he was eligible for special education. (*Id.* at 12.) The District offered him placement in a special-education class and various therapy sessions, which the IEP team found appropriate. (*Id.* at 13.) When the District offered the same placement and services at the next IEP meeting, the parents consented to the majority of the IEP. (*Id.* at 13–14.) A.R. began attending the special-education class in January 2011. (*Id.* at 15.)

In March 2011, although A.R. was making "great" progress, the parents notified the District that they believed its initial assessments were not comprehensive enough to identify all of his unique needs. (*Id.* at 15.) At the third IEP meeting, they expressed concerns that A.R. required placement in a general-education setting. (Pls.' Trial Br. 4.) The special-education teacher opined that A.R. would need constant assistance in a regular preschool, which would create dependence; the other experts similarly expressed that he was not yet ready. (OAH Decision 16.) Instead, the District proposed placing A.R. in a preschool collaborative classroom. (Pls.' Trial Br. 5.)

After the fourth IEP meeting held on April 7, 2011, the parents consented to placement in a different preschool collaborative classroom and to all parts of the IEP for implementation purposes only. (*Id.* at 6.) They hired a neuropsychologist to

conduct an independent educational evaluation ("IEE") and sought reimbursement from the District. (Def.'s Trial Br. 4.) The District denied their request and filed for a due-process hearing with the OAH, seeking an order that its assessments were appropriate and that it was not required to fund the IEE. (*Id.*)

The parents then notified the District that they were withdrawing A.R. from its program. (Pls.' Trial Br. 7.) On June 20, 2011, the parents unilaterally placed A.R. in Branches Atlier, a private preschool, and began paying a 1:1 behavioral aide to assist A.R. (*Id.* at 7–8.) Accordingly, the District stopped providing A.R.'s related services. (OAH Decision 18.) The District maintained that it had offered A.R. appropriate placement and notified the parents that it would not reimburse them for private tuition or other services. *Id.* After removing A.R. from the District's program, the parents funded A.R.'s tuition, behavioral supports, and services. (Pls.' Trial Br. 8.)

At an addendum IEP meeting on July 26, 2011, the IEP team heard from the neuropsychologist the parents had hired to perform the IEE, but maintained that the District had offered appropriate placement. (OAH Decision 27.) The parents cross-filed for an OAH due-process hearing. (*Id.* at 1.) They claimed the District denied A.R. a FAPE and requested reimbursement for the expenses they incurred in securing the IEE, placing A.R. in a private school, and paying for his related services. (*Id.* at 2–4.) The ALJ found for the District and denied Plaintiffs' request for relief. (*Id.* at 55.)

### III. STANDARD OF REVIEW

In reviewing an administrative decision under the IDEA, district courts review the administrative proceeding records, hear additional evidence, and grant relief based on the preponderance of the evidence. 20 U.S.C. § 1415(i)(2)(C). This modified *de novo* standard requires the Court to give the administrative proceedings "due weight." *Capistrano Unified Sch. Dist. v. Wartenberg*, 59 F.3d 884, 891 (9th Cir. 1995).

The Court is free to determine how much weight to give the administrative decision, though the Ninth Circuit instructs that it should be given more weight if the

findings are thorough and careful. *Id.* at 891–92. Specifically, an ALJ's decision is entitled to "substantial weight" when it "evinces his careful, impartial consideration of all the evidence and demonstrates his sensitivity to the complexity of the issues presented." *Ojai Unified Sch. Dist. v. Jackson*, 4 F.3d 1467, 1476 (9th Cir. 1993).

Here, the ALJ was thorough, careful, and "intensive." *See Cnty. of San Diego v. Cal. Special Educ. Hearing Office*, 93 F.3d 1458, 1467 (9th Cir. 1996). The 55-page, single-spaced OAH Decision provides lengthy discussions of each issue and supports conclusions with relevant factual and legal analysis—all in exhaustive detail. Accordingly, the Court gives it substantial weight.

## IV. DISCUSSION

The Court evaluates the IEP for objective reasonableness in light of information available at the time it was drafted. *Adams v. Oregon*, 195 F.3d 1141, 1149 (9th Cir. 1999). And the Court must focus primarily on the District's proposed placement, not on the alternatives that the parents may have preferred. *Gregory K. v. Longview Sch. Dist.*, 811 F.2d 1307, 1314 (9th Cir. 1987). Under this standard, the Court concludes that the District properly offered A.R. a FAPE.

The District was not required to provide A.R. the best education possible, only one sufficient to confer some educational benefit upon him—a "basic floor of opportunity." *Bd. of Educ. of Hendrick Hudson Cent. Sch. Dist. v. Rowley*, 458 U.S. 176, 200–01 (1982). Even if a 1:1 aide in a general-education setting would have been a better option for A.R., that does not necessarily mean that the District's placement offer was inappropriate. *Gregory K.*, 811 F.2d at 1314–15. The ALJ correctly determined that the District did not commit any procedural violations that would have resulted in the deprivation of educational benefit.

The parents believe they are entitled to reimbursement for the costs of private placement and services. But because the District offered A.R. a FAPE and the parents chose to enroll him at a private school instead, the District does not owe them those costs. 34 C.F.R. 300.148(a).

In a judicial-review action, the party challenging an ALJ's decision bears the burden of persuasion. *L.M. v. Capistrano Unified Sch. Dist.*, 556 F.3d 900, 910 (9th Cir. 2009). When the Court and the parties reached the consensus that this matter should be determined without a hearing, the parties agreed to present only meritorious arguments and to provide accurate, relevant cites to the record. Instead, Plaintiffs provided bare legal conclusions. The assertions are followed sometimes by case cites, many of which are incorrectly cited or irrelevant; sometimes by unexplained (and often inaccurate) string cites to the record spanning upwards of a thousand pages; and sometimes there are no cites at all. Plaintiffs' arguments do not show how the ALJ failed to consider the evidence, or how the evidence could otherwise support a contrary conclusion. In sum, Plaintiffs have not met their burden of proof.

## V. CONCLUSION

The Court has thoroughly reviewed the parties' Trial Briefs, the evidence submitted, and the OAH decision. Despite Plaintiffs' assertion, the Court finds no issue with the ALJ's determination. The ALJ's factual findings are supported by the record and the legal conclusions are sound. Accordingly, the OAH Decision is hereby **AFFIRMED**. Plaintiffs' request for reimbursement and attorney's fees is **DENIED**.

Thus, **IT IS HEREBY ORDERED** that:

1. Plaintiffs A.R. and his parents take nothing;
2. Judgment for Santa Monica-Malibu Unified School District.

**IT IS SO ORDERED.**

August 12, 2013

_____
**OTIS D. WRIGHT, II
UNITED STATES DISTRICT JUDGE**